IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN R. BLACKWELL, : | |
| : | |
| Plaintiff, : | |
| : | **CIVIL ACTION NO. 3:04-2089** |
| vs. : | |
| : | (JUDGE NEALON) |
| JO ANNE B. BARNHART, : | (MAGISTRATE JUDGE SMYSER) |
| Commissioner of Social Security, : | |
| : | |
| Defendant : | |

**MEMORANDUM and ORDER**

This is a Social Security/Disability matter which comes before the Court on the Plaintiff's appeal from the denial of disability insurance benefits by the Defendant, Commissioner of Social Security. The matter was referred to United States Magistrate Judge J. Andrew Smyser for initial consideration. On April 21, 2005, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Plaintiff's appeal be denied. (Doc. 13). The Plaintiff filed Objections to the Report and Recommendation on May 6, 2005, to which the Government filed a reply on May 16, 2005. (Docs. 14, 15) The matter is ripe for disposition and, for the reasons that follow, the Report and Recommendation will be adopted and the appeal will be denied.

**I. Standard of Review**

Pursuant to the Federal Magistrates Act, when objections to a report and recommendation have been filed, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions." 28 U.S.C. § 636(b)(1)(C). This matter will be reviewed de novo as to those portions of the Report and Recommendation to which objections were filed.

**II. Procedural Background**

The Plaintiff, John R. Blackwell, filed an application for Disability Insurance Benefits ("DIB") on April 26, 2000 and again on June 18, 2003,[1] alleging an inability to work since 2000, due to, *inter alia*, emphysema, diabetes, arthritis and back pain. (R. 20). His request for benefits was denied at the initial level and on reconsideration. After filing a request for a hearing before an Administrative Law Judge ("ALJ"), hearings were held on July 18, 2001, September 17, 2002, November

---

[1] The first application was remanded to the ALJ from by an order of the Appeals Council dated May 17, 2003. After the second application was filed, the two cases were consolidated.

12, 2002 and September 30, 2003, which resulted in a decision, unfavorable to the Plaintiff, being issued on January 22, 2004. (R. 14). The Plaintiff then requested review by the Appeals Council which, by Notice of Action dated August 9, 2004, declined review of that decision, making the decision of the ALJ the final decision of the Commissioner of Social Security. (R. 9-11). This appeal followed on September 21, 2004. (Doc. 1).

On January 7, 2005, the Plaintiff filed a brief in support of his appeal wherein he argued that the there was not substantial evidence to support the decision of the ALJ. He further contended that the ALJ erred in assuming the role of a medical expert and ignoring the opinions of disability offered by Plaintiff's physician. Plaintiff also asserted that the ALJ failed to give adequate consideration to the opinions of the consulting physicians, and relied instead upon the opinions of non-treating bureaucrats. He maintained, moreover, that the ALJ's hypothetical questions to the Vocational Expert ("VE") were flawed. (Doc. 9). Finally, Plaintiff contended that the ALJ was biased. The Government filed an opposing brief on February 9, 2005. (Doc. 12). The Magistrate Judge issued a Report and Recommendation on April 21, 2005, recommending that the appeal be denied. (Doc. 13). Timely objections, and a response thereto, followed. (Docs. 14, 15).

**III. Disability Determination Process**

The Social Security Regulations establish a five-step evaluation process which is used to determine if a person is entitled to disability benefits. *See* 20 C.F.R. § 404.1520. If at any step in the process the Commissioner finds that a Plaintiff is disabled or not disabled, review does not proceed any further. 20 C.F.R. §§ 404.1520, 416.920. The steps in the process are as follows: 1) Is the individual engaging in substantial gainful activity? 2) Does the individual have a severe impairment? 3) Does the individual have an impairment which meets or equals the listing of impairments as set forth in 20 C.F.R. part 404, subpart P, *appendix* 1? 4) Does the individual retain the residual functional capacity to engage in his/her past relevant work? and 5) If an individual does not have the capacity to engage in his/her past work, does s/he retain the capacity to perform jobs which exist in significant numbers in the national economy? *See* Social Security Ruling 86-8; 20 C.F.R. §404.1520.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v.*

*Shalala,* 993 F.2d 1058, 1064 (3d Cir.1993).

In the present case, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, and also found that while he had some impairments that were severe, these impairments did not meet, or medically equal, any listed impairments. (R. 29). He further determined that, although Plaintiff had no past relevant work, he retained the residual functional capacity ("RFC") to perform a significant range of medium work in the national economy. (*Id.*). Consequently, the ALJ concluded that he was not disabled. (*Id.*)

## IV. Discussion

The role of this court in reviewing a decision by the Commissioner of Social Security to deny disability benefits is to "determine whether there is substantial evidence to support the Commissioner's decision." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004)(*citing Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir.1999)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... It is less than a preponderance of the evidence but more than a mere scintilla." *Id.* (internal quotations and citations omitted). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966)(cited in *Richardson v. Perales, supra*). "Substantial evidence had been . . . defined as 'enough [evidence] to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.' *NLRB v. Columbian Enameling & stamping Co.*, 306 U.S. 292, 300 (1939)," *Olsen v. Schweiker*, 703 F.2d 751, 753 (3rd Cir. 1983). Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart, supra,* 364 F.3d at 503.

In the Report and Recommendation, the Magistrate Judge found that there was substantial evidence in the record to support the decision of the ALJ and specifically that the medical evidence supported the ALJ's conclusion that Plaintiff could perform medium work. He further concluded that the ALJ correctly addressed the Plaintiff's educational level and appropriately rejected the assertion that Plaintiff was illiterate. Finding that the ALJ properly evaluated Plaintiff's IQ in combination, not only with other impairments but also with his testimony as to his abilities, the Report and Recommendation determined that Plaintiff's allegations of error in the conclusions drawn therefrom were unsubstantiated. Moreover, although Plaintiff maintained that the ALJ did not properly weigh the medical evidence and that he "ignored" the conclusions of the treating physicians, Magistrate Judge Smyser pointed out that the

issue of disability is both a medical and vocational issue, and found that the ALJ was justified in giving less weight to the opinion of a treating physician who opined Plaintiff was "disabled," a conclusion reserved to the discretion of the ALJ. Additionally, while Plaintiff argued that the ALJ's hypothetical questions to the VE were flawed, the questions posed to the VE described characteristics substantially similar to Plaintiff's. The Magistrate Judge also found that this argument reiterated Plaintiff's original contention that the conclusions of the ALJ as to Plaintiff's vocational characteristics, impairments, and RFC were not based on substantial evidence with which he disagreed and found that there was substantial evidence to support the findings of the ALJ on these issues. Finally, the Magistrate Judge concluded that Plaintiff's allegations of bias on the part of the ALJ lacked merit.

The Plaintiff presents the following grounds as objections to the Report and Recommendation:

1. The Report and Recommendation improperly upheld the ALJ's finding that Plaintiff could perform medium work.

2. The Magistrate Judge erred in upholding the ALJ's assessment of the relative weight to be given to the various medical reports.

3. The Report and Recommendation did not address Plaintiff's argument that he had a listed impairment.

4. The Magistrate Judge erroneously affirmed the ALJ's analysis of Plaintiff's low IQ and mental health problems.

5. The Report and Recommendation erred in ratifying the hypothetical questions posed to the Vocational Expert.

6. The Magistrate Judge improperly concluded that Plaintiff's claims of bias against the ALJ did not merit further investigation.

(Doc. 14). Each of these will be addressed *in seriatim*.

## *I. Plaintiff's Ability to Perform Medium Work*

Plaintiff first objects to the Magistrate Judge's affirmance of the ALJ's conclusion that he retained the RFC to perform medium work. He raised this issue in his appeal brief, stating that "no treating or consulting physician concluded Plaintiff could perform medium work." (Doc. 9, p.7). The Report and Recommendation noted, however, that the record contained such an expert opinion, that of the state agency physician, who opined that Plaintiff could perform a full range of medium work. (R. 228-235). While some of the physicians did not opine that he was capable of performing medium work, these opinions were not supported by the objective evidence of record and, in some instances, the physicians' own conclusions of Plaintiff's inability to perform medium work, or any work, conflicted with their examination notes. Moreover, although the medical evidence of record referenced impairments including back problems, emphysema and diabetes, the limitations resulting therefrom were not significant and were often well-managed by medications. Consequently, there is substantial evidence to support the ALJ's

8

determination that Plaintiff is capable of performing medium work.

## *II. Assigning Weight to the Various Medical Reports*

Plaintiff next assert that the ALJ did not give appropriate weight to the various medical reports, and that he erred in affording more weight to the opinions of a non-treating agency physician over those of Plaintiff's treating physician.  Noting that the treating physician, Dr. Wilson, found plaintiff to be disabled, both the ALJ and the Magistrate Judge remarked that, not only is such a determination reserved exclusively to the ALJ, but also that Dr. Wilson's treatment records belie a more positive picture of Plaintiff's health, noting his conditions were under control in many instances and that Plaintiff was observed to be doing well on several occasions.  Additionally, inasmuch as this conclusion did not address Plaintiff's disability from a functional standpoint, his opinion was not entitled to significant weight.  Moreover, although a consultive agency orthopedic physician, Dr. Gillam, found that Plaintiff's back problems precluded a full range of medium work, the ALJ observed that this physician's own clinical examination did not support such a conclusion.  Having found  Plaintiff to have no neurological deficiencies and only minor deficits in his lumbar spine and lateral flexations, Dr. Gillam's conclusion opining that Plaintiff's RFC is limited to less than a full range of medium work is not fully supported by the evidence. (R. 216-222).  Therefore, the ALJ cannot be faulted for rejecting his

opinion as to Plaintiff's RFC.

Because the objective medical evidence of record demonstrates Plaintiff's impairments do not impede his functioning and appear to be manageable, there is substantial evidence to support the ALJ's analysis of the various medical opinions and the weight afforded to each.

### *III. Whether Plaintiff Has a Listed Impairment*

A finding of an existent medical condition alone does not demonstrate a disability. *See Petition of Sullivan,* 904 F.2d 826, 845 (3d Cir. 1990). Thus, the question is not only whether the plaintiff has a medical condition, but also whether the condition causes a functional disability that prevents the plaintiff from participating in gainful activities. *Guthrie v. Barnhart.* (M..D. Pa. No. 02-2114)(Kosik, J.). Plaintiff argues that the ALJ failed to give any consideration to whether he has a listed impairment or equivalent thereof. The court finds this assertion not only meritless but incorrect.

After a lengthy review of the medical evidence, the ALJ determined that Plaintiff's diabetes was not a "severe" impairment, finding that "nothing in the record suggest[ed] . . . [it] had an adverse impact on his ability to perform basic work-related activities." (R. 20). He also concluded that Plaintiff's adjustment disorder to be "severe" within the meaning of the Regulations. (R. 23). He further stated that his

"borderline intellectual functioning and degenerative changes in the lumbar spine" were "severe" but not enough to meet or medically equal a listed impairment. (*Id.*). Finally, the ALJ found that he "has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations" but that "[t]hese medically determinable impairments do not meet or medically equal one of the listed impairments." (R. 29). Contrary to Plaintiff's assertion otherwise, this issue was addressed by the ALJ and there exists substantial evidence in the record to support the determination that Plaintiff does not have an impairment that meets or medically equals a listed impairment to be considered disabling for purposes of the Act.

### *IV.  Plaintiff's IQ and Mental Health*

Plaintiff next avers that the ALJ did not properly consider Plaintiff's IQ and mental health in determining whether, in combination with his other conditions, he had a listed impairment.  While a finding of disability may be made when an IQ of a certain range[2] is coupled with another physical or mental impairment, such a determination is not mandatory. Accordingly, the ALJ was not required to consider whether Plaintiff's IQ was comparable to a 12.05C Listing inasmuch as he found that

---

[2] Plaintiff cites the Social Security Program Operating Manual System (POMS) DI24515.056(D)(1)(c), which permits a finding of disability when an IQ of 70-75 is present with another physical or mental impairment.  He maintains that such a finding can be deemed the medical equivalent of a listed impairment 12.05C, which requires an IQ of 60-69 and some other physical or mental impairment.

none of his impairments, alone or in combination, met or medically equaled a listed impairment. Moreover, the record clearly indicates that the ALJ noted Plaintiff's low IQ score in rendering his decision. The ALJ reviewed the opinions of Dr. Palmer, who administered the IQ test to Plaintiff. (R. 21-22). In addition to the IQ determination, Dr. Palmer opined that Plaintiff's "borderline intellectual functioning would not interfere with his ability to accomplish activities of daily living on a routine basis," and that "[he could] probably function adequately with co-workers and employers." *Id*. Although Dr. Palmer observed "[Plaintiff's] concentration as being 'poor' when compared to the general population," he observed that it was "adequate" for Plaintiff's ability level. *Id*. It follows, therefore, that there is substantial evidence that Plaintiff's IQ and mental abilities were properly considered by the ALJ.

### *V. Hypothetical Questions to the Vocational Expert*

Plaintiff additionally maintains that the hypothetical questions posed to the VE were flawed in that they did not accurately reflect the medical record. He argues that the use of "grid" regulations was improper due to Plaintiff's non-exertional inabilities and also that the ALJ placed too few restrictions with regard to Plaintiff's ability to stand, walk and lift.

"A hypothetical question must reflect all a claimant's impairments that are supported by the record; otherwise the expert's answer to it cannot be considered

substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269 (3rd Cir. 1987). As noted in the Report and Recommendation, the hypothetical questions posed to the VE describe characteristics of a person substantially similar to Plaintiff. Specifically, the ALJ referenced a 49 year-old man with a seventh grade special education; who has limited reading and arithmetic abilities and borderline intellectual functioning; who has some back pain; who lacks work experience; who can accomplish most activities of daily living on a routine basis; who can function adequately with co-workers and employers; and whose pace is slow and may lack somewhat in persistence. (R. 374-377). This detailed characterization encompasses all Plaintiff's impairments which are supported by the record. As stated above, a claimant may have impairments, or combination of impairments, which do not meet or medically equal a listed impairment and, consequently, will not be considered "disabling" for purposes of the Act. In such cases where the impairments do not rise to the level of a disability, they need not be considered in the hypothetical questions posed to a VE. The hypotheticals were, therefore, proper.

### *VI. Bias by the ALJ*

Plaintiff maintains that ALJ Russell was biased against him, and in support of this contention offers the fact that three other cases were remanded for consideration of the possibility of bias on the part of the ALJ Russell. However, those decisions did

not extend to all decisions rendered by this ALJ, nor even all of his decisions which were adverse to plaintiffs.  Consequently, the fact that three cases were remanded to the Agency, without more, will not support remand in all cases involving this ALJ. While Plaintiff maintains that he did not receive an impartial hearing, he offers nothing in support of the allegation other than a general reference to the record and the ALJ's decision being unfavorable to him.  Plaintiff has thus failed to state a claim of bias, let alone establish such a charge.  Consequently, this issue is found to be without merit.

### V. Conclusion

Finding no error in Magistrate Judge Smyser's Report and Recommendation, the same will be adopted by the court.  Based on the foregoing, the appeal will be denied.  An appropriate Order follows.

Date: July 5, 2005                                       s/ William J. Nealon
                                                         United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN R. BLACKWELL,              :
    Plaintiff,               :
                                :     **CIVIL ACTION NO. 3:04-2089**
    vs.                      :
                                :     (JUDGE NEALON)
JO ANNE B. BARNHART,            :     (MAGISTRATE JUDGE SMYSER)
Commissioner of Social Security, :
    Defendant.               :

## **ORDER**

**AND NOW**, this 5th day of JULY 2005, consistent with the accompanying Memorandum of this date, **IT IS HEREBY ORDERED THAT**:

(1) The Magistrate Judge's Report and Recommendation (Doc. 13) is **ADOPTED**.

(2) The Plaintiff's appeal is **DENIED**.

(3) The Clerk of Court is directed to close this case.


                                        s/ William J. Nealon
                                        United States District Judge